IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:08-CV-41-BO

| | |
|---|---|
| PCJ FRANCHISING COMPANY, LLC, and PORT CITY ROASTING CO., LLC, <br><br> Plaintiffs, <br><br> v. <br><br> TRACY L. NEWSOME, TIMOTHY S. ABEL, and NEWABEL, LLC, <br><br> Defendants. | O R D E R |

This motion is before the Court on Plaintiffs PCJ Franchising Company, LLC (PCJ) and Port City Roasting Co., LLC's, Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, Plaintiffs' Motion to Dismiss is GRANTED in part and DENIED in part.

I. SUMMARY OF THE INSTANT DISPUTE

Defendants contacted PCJ about opening a Port City Java Café in South Carolina. PCJ sent Defendants a Franchise Offering Circular ("FOC") pursuant to the Federal Trade Commission's Franchise Disclosure Rule.[1] The FOC listed the start up costs and profits of PCJ's affiliates. However, PCJ's affiliates obtain products from companies under common control with PCJ and do not pay royalties to PCJ.

Based on the information and figures in the FOC, Defendants entered into a Franchise

---

[1] 16 C.F.R. § 436.1.

Agreement with Plaintiffs on November 30, 2004. Defendants subsequently opened a Port City Java Café in September 2005. Defendants were not successful in their Port City Java Café and ultimately closed their doors in February 2008 due to financial difficulties. Plaintiffs brought suit against Defendants on March 25, 2008, for breach of the Franchise Agreement.

Defendants filed counterclaims[2] alleging: (1) Unfair and Deceptive Practices; (2) Unfair and Deceptive Trade Practices; (3) Breach of Franchise Agreement; (4) Breach of Implied Duty of Good Faith; (5) Tortious Interference with Contract; (6) Tortious Interference with Prospective Contractual Relations; (7) Fraud; (8) Fraudulent Inducement; (9) Negligent Misrepresentation; and (10) Rescission. Plaintiffs filed a Motion to Dismiss on June 23, 2008, and this motion is now before the Court.

## II. MOTION TO DISMISS

A claim should be dismissed under FED. R. CIV. P. 12(b)(6) when, taking the allegations in the complaint in the light most favorable to the non-moving party and drawing all inferences in that party's favor, it appears certain that the non-moving party cannot prove any set of facts in support of the claim that would entitle that party to relief.[3] A motion to dismiss "allows a court to eliminate actions that are fatally flawed in their legal premises and destined to fail, thus

---

[2]The initial counterclaims were filed on May 29, 2008. An amended Answer and Counterclaim was filed on June 10, 2008. The amended counterclaims are the counterclaims to which this Order refers.

[3]*Parham v. Pepsico, Inc.*, 927 F.Supp. 177, 178 (E.D.N.C. 1995) (citing *Mylan Lab, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993)(*cert denied*, 510 U.S. 1197 (1994))).

sparing litigants the burdens of unnecessary pretrial and trial activity."[4]  Each counterclaim is addressed below.

    1.    <u>Defendant's counterclaims one and two, which are based on the South Carolina Unfair Trade Practices Act (SCUTPA) are excluded by the choice of law provision in the Franchise Agreement.</u>

The Franchise Agreement (Agreement) has a choice of law provision which states that North Carolina law applies to the "construction of [the] Agreement and shall govern all questions which arise with reference" thereto.[5]  When considering a choice of law provision, the court must analyze two issues: (1) whether the choice of law provision is binding; and (2) whether there are any applicable exceptions to the choice of law provision.

First, the choice of law provision applies because there is a reasonable basis for choosing North Carolina law and the choice does not violate a fundamental public policy. A choice of law provision "is generally binding on the interpreting court so long as [the parties] had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental public policy."[6]

The parties had a reasonable basis for the choice of law provision because PCJ is incorporated under the laws of North Carolina and North Carolina has laws specifically addressing franchises. In addition, the parties agreed that it was to their "mutual benefit" to

---

[4]*Parham*, 927 F.Supp. at 178.

[5]Franchise Agreement § 23.2.

[6]*Torres v. McClain*, 140 N.C.App. 238, 241, 535 S.E.2d 623, 625 (2000).

uniformly interpret the agreement.[7]

The choice of law provision does not violate public policy. This Court is aware that choice of law provision cannot be used to avoid laws designed to protect the people of a particular state and promulgated under state police powers. However, the conduct that allegedly results in liability does not lie in Plaintiff's *ex delicto* conduct, but rather lies expressly in the contract itself. Defendants have claimed that the terms of the FOC were false, misleading, and non-compliant. The FOC was expressly incorporated into the contract.[8] Accordingly, the choice of law provision applies.

Second, no exceptions apply to the choice of law provision in this instance. As Defendants point out, the choice of law provision states that "to the extent that the law of the state of North Carolina does not conflict with local **franchise** statutes, rules and regulations, North Carolina laws apply to the construction of this Agreement."[9] SCUTPA is not a franchise statute but rather is a consumer protection statute designed to provide relief for unfair trade practices.[10] Therefore, the exception for conflicting state **franchise** statutes does not apply.

Because Defendants' counterclaims one and two both arise under SCUTPA, and because

---

[7]*Id.*

[8]Franchise Agreement §§ 26.4, 27.2.

[9]Franchise Agreement § 23.2 (emphasis added).

[10]Note that, in order to bring an action under SCUTPA, the plaintiff must allege "that the unfair or deceptive act had an adverse impact on the public interest." *See* S.C.Code Ann. § 39-5-140; see also *United Energy Distributors, Inc. v. ConocoPhillips Co.*, 2008 WL 4458991 D.S.C. (2008) (citing *Daisy Outdoor Advertising Co., Inc. v. Abbott*, 322 S.C. 489, 473 S.E.2d 47, 49 (S.C. 1996)). This requirement indicates that SCUTPA is not meant to govern franchises, but rather is meant to protect consumers from businesses engaging in unfair dealings with the public as a whole.

-4-

SCUTPA is excluded by the choice of law provision in the Agreement, Plaintiffs' Motion to Dismiss counterclaims one and two is GRANTED.

2. <u>Defendants' third counterclaims state a claim upon which relief may be granted because PCJ may have failed to adequately aid Defendants as required under the Agreement.</u>

In the Agreement, PCJ vowed that "[i]n addition to the guidelines and recommendations set forth in the [Operations] Manual, Franchisor **will** consult with and advise Franchisee."[11] However, Defendants allege that, although PCJ acknowledged their pleas, PCJ did not advise them and turned down all of their suggestions. Because PCJ's failure to advise Defendants or to accept any of Defendant's suggestions for turning the business around may have been a breach of the Agreement, Plaintiffs' Motion to Dismiss is DENIED.

3. <u>PCJ may have breached its duty of good faith when it imposed unreasonably burdensome restrictions on Defendants' proposed sale of their Port City Java Café.</u>

It is a "basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement."[12] Although PCJ had a right to approve, disapprove, or create conditions surrounding an offer to purchase Defendants' franchise, it had to do so in good faith.

---

[11] Franchise Agreement § 6.10 (emphasis added).

[12] *Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*, 40 N.C.App. 743, 746, 253 S.E.2d 625, 627 (1979). See also *Governors Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C.App 240, 251, 567 S.E.2d 781, 789 (2002) (stating that in "every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.").

Here, the potential purchaser already owned multiple Port City Java franchises and thus had been approved before by PCJ to own a PCJ franchise. When Defendants were desperate to sell because of the financial losses they had sustained, however, PCJ only approved the transfer subject to burdensome requirements, which ultimately resulted in withdrawal of the offer to purchase.

PCJ's burdensome requirements on a purchaser they had previously approved for PCJ franchise ownership indicate a lack of good faith, and Plaintiffs' Motion to Dismiss is accordingly DENIED.

4. <u>Defendants' fifth and sixth counterclaims fail because PCJ is not an "outsider" as required under the law.</u>

Tortious interference requires that an outsider, which is one who is not a party and who has no legitimate business interest, have knowledge of the contract.[13] Because PCJ had a legitimate business interest in the transfer of the franchise, PCJ is not an outsider as required by the law and Defendants' counterclaim necessarily fails. Accordingly, Plaintiffs' Motion to Dismiss is GRANTED.

5. <u>Defendants' seventh, eighth, and ninth counterclaims state a claim upon which relief may be granted because Defendants relied on the FOC PCJ provided of its affiliates' financial information.</u>

There are two issues surrounding this claim: (1) whether the representations in the FOC should be considered when it was provided before the Agreement and the Agreement contains an

---

[13]*Allied Distribs, Inc. v. Latrobe Brewing Co.*, 847 F.Supp. 376, 379 (E.D.N.C. 1993).

integration clause; and (2) whether PCJ's representations in the FOC constituted fraud, fraudulent inducement and/or material misrepresentations. First, the representations in the FOC should be considered because the integration clause in the Agreement specifically includes "the documents referred to" therein.[14] The Agreement refers to the FOC in § 27.2.[15] Therefore, the FOC was integrated into the document and its consideration will not violate the Parol Evidence Rule.[16]

Second, PCJ's representations in the FOC may have constituted fraud, fraudulent inducement, or negligent misrepresentation. The FTC first promulgated the Franchise Disclosure Rule, which is the rule that required PCJ to provide the FOC, to ensure that potential franchise purchasers were provided with truthful, complete and timely information on which they could rely in making a decision to purchase a franchise opportunity.[17] Defendants relied on the FOC as a truthful and complete statement which would help them decide whether to invest in a PCJ franchise. The information was arguably misleading, however, because it included financial information for PCJ affiliates, which have a markedly more favorable financial structure than PCJ franchisees.

---

[14]Franchise Agreement § 26.4.

[15]"Except for such earnings claims as are set forth in the Franchisor's Uniform **Franchise Offering Circular**... no representation has been made by Franchisor as to the historical or projected gross or net profits or revenues of the Café or Double Drive-Thru." Franchise Agreement p. 51 (§ 27.2).

[16]Note that, even if the FOC hadn't been integrated by reference, the Fourth Circuit has held that an integration clause does not exclude evidence used to show fraudulent inducement. *Godfrey v. Res-Care, Inc.*, 165 N.C.App. 68, 78, 598 S.E.2d 396, 403 (2004).

[17]FTC Interpretive Guidelines.

-7-

Case 7:08-cv-00041-BO   Document 52   Filed 10/28/08   Page 7 of 9

Therefore, because the FOC may be considered and because PCJ's FOC may have been materially misleading, Defendants have stated a claim upon which relief may be granted and Plaintiffs' Motion to Dismiss is DENIED.

6. <u>Defendants failed to state a claim upon which relief may be granted when demanding rescission because they are not in a position to put Plaintiffs back to the *status quo*.</u>

"As a general rule, a party is not allowed to rescind where he is not in a position to put the other in *statu[s] quo* by restoring the consideration passed."[18] Here, Defendants donated the equipment and furniture to Touch the Ground Foundation, have not offered to refund any profits, and cannot give back the training they gained. Accordingly, Defendants are not in a position to put Plaintiffs in *status quo* or even close to it. As a result, Plaintiffs' Motion to Dismiss Defendants' counterclaim for rescission is GRANTED.

III. CONCLUSION

Plaintiffs' Motion to Dismiss Defendants' counterclaims one, two, five, six, and ten is GRANTED. Plaintiffs' Motion to Dismiss Defendants' counterclaims three, four, seven, eight, and nine is DENIED.

---

[18]*Melton v. Family First Mortgage Corp.*, 156 N.C.App. 129, 136, 576 S.E.2d 365, 370-71 (2003).

SO ORDERED, this __27__ day of October 2008.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE